**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERENCE EDWARD STRONG,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:15-cv-00488-DAD-SMS<br><br>FINDINGS AND RECOMMENDATION TO AFFIRM AGENCY'S DENIAL OF BENEFITS |

This Findings and Recommendation is submitted to United States District Judge Dale A. Drozd under 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 302(c) of the United States District Court for the Eastern District of California.

Plaintiff Terence Edward Strong seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Magistrate Judge. Following a review of the record and applicable law, the undersign recommends affirming the decision of the Administrative Law Judge ("ALJ").

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for DIB and SSI on February 28, 2011, alleging disability beginning on June 30, 2008. AR 92-93, 163, 173. The Commissioner denied Plaintiff's claims on June 9, 2011, and upon reconsideration on October 13, 2011. AR 100, 107. Plaintiff then timely requested a hearing before an ALJ. AR 113.

On September 4, 2012, Plaintiff appeared and testified before an ALJ Judson Scott. Also at the hearing were Plaintiff's counsel, a medical expert and an impartial vocational expert ("VE"). AR 40. In a written decision dated August 30, 2013, the ALJ found Plaintiff was not disabled under the Act from June 30, 2008 through the date of the decision. AR 33. On January 29, 2015, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint. AR1; Doc. 1.

B. *Factual Background*

The Court will not recount in detail all the facts of this case, discussing only what is relevant to this appeal.

1. Plaintiff's Written Testimony

In his first disability report, dated March 8, 2011, Plaintiff stated that a herniated disk and severe back problems limited his ability to work. He had been receiving medications and treatment for his back injury and a gunshot wound from physicians associated with Kaiser, the Brain and Spine Institute, Mercy Hospitals of Bakersfield, and Chiropractors of Santa Monica. He last worked in 2008 as a project manager at a construction company, a position he held for approximately ten years. AR 192-197.

Plaintiff completed a second disability report on July 6, 2011, wherein he claimed worsening

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

2

back pain and numbness of the right hand. He could no longer bend, crawl, sit for long periods, and could "only walk and drive for 30 minutes" at a time. Changes in his daily activities included no longer going shopping, lifting heavy objects, and performing household chores such as mopping or sweeping, as they caused back cramps. AR 212-215.

In his final disability report, dated November 23, 2011, Plaintiff reported additional worsening conditions with cold weather, stiffness and muscle fatigue of the back. He took longer attending to his personal needs. And while physical therapy was helpful, his engagement in daily activities was minimal. Plaintiff no longer danced or attended sporting events, activities which he enjoyed. AR 220-223.

2. <u>Medical Evidence</u>

Records from Pacific Orthopedic Medical Group show Plaintiff was under the care of Clement O. Alade, M.D. in 2008. Dr. Alade evaluated Plaintiff in April 2008 following complaints of mid and low back pain. While Plaintiff reported the pain began "… two weeks ago," records and x-rays show chronic low back pain for eight months. Dr. Alade diagnosed Plaintiff with thoracolumbar back pain with muscle spasm and degenerative disc disease at T12-L1 and L5-S1. He gave Plaintiff a lumbosacral corset, prescribed medications, recommended physiotherapy treatment, and placed him on temporary total disability from work until further reevaluation. AR 257-258.

After satisfactory progress with therapy and becoming ambulatory without a brace, Plaintiff was permitted to return to work in June, but remained on nonsteroidal and anti-inflammatory medications. By July 2008, Dr. Alade found Plaintiff fully ambulatory, although x-rays show degenerative disc disease was moderate to severe at L5-S1. He recommended a lumbar epidural injection, with which Plaintiff did not comply. Instead, Plaintiff sought alternative treatment from a chiropractor in Santa Monica, which he saw on a nearly monthly basis from August 2008 to April 2009. AR 250-252, 261-272.

Records from Mercy Hospitals of Bakersfield show that in July 2010, Plaintiff was treated for a gunshot wound to his right forearm suffered as a victim of a robbery which caused a contusion to the superficial radial nerve. He was advised it would take six to seven months for the nerve to recover. By October, the nerve was regenerating at a normal rate, and by January 2011, the Tinel's sign had expanded to the proximal phalanges with normal sensation beyond the tip of the thumb. However, there was still no Tinel's sign at the site of the gunshot wound. AR 330-333.

Records from the Brain and Spine Center include a letter from Mark A. Liker, M.D., to Plaintiff's counsel. Dr. Liker stated he had been evaluating Plaintiff since January 2011 and found he suffered from lumbar degenerative disc disease and a prominent far right lateral disc protrusion which severely narrows the right lateral recess and origin of the L3-4 foramen. Dr. Liker recommended surgery, namely right L3-4 microlumbardiscectomy. He opined that further testing for purposes of completing the Social Security physical assessment forms would exacerbate Plaintiff's symptoms and worsen his condition, given the disc protrusion. AR 304.

From May to October 2011, a number of state medical consultants reviewed Plaintiff's file and opined Plaintiff had a light RFC. AR 305-317.

From October 2011 to February 2012, Daniel M. Silver, M.D., of Silver Orthopedic Centers treated Plaintiff on a monthly basis. Dr. Silver completed a medical source statement in February 2012,[2] a fill-in-the-blank questionnaire, wherein he concluded that due to back pain, Plaintiff: (1) could sit and stand/walk for no more than two hours each in an eight-hour day; (2) could not lift and carry less than ten pounds; (3) could not stoop, push and bend; (4) had significant limitations in doing repetitive lifting; (5) did not need to use a cane or assistive device to stand/walk; (6) cannot engage in a full time competitive job requiring activity on a sustained basis; (7) is incapable of handling low stress; (8) would be absent from work for more than three times a month; and (9) may

---

[2] Dr. Silver dated the questionnaire as "2/7/12," but therein stated "7/1/12" as "the earliest date that the description of symptoms and limitations in this questionnaire applies." AR 342-343.

4

need lumbar surgery.  AR 340-343.

In contrast to the recommendation of surgery from Drs. Liker and Silver, another physician, K. Rad Payman, M.D., of Payman Spine Centers, recommended in December 2011 that Plaintiff continue with conservative care, including additional injections.  AR 434.

In March 2012, Dale H. Van Kirk, M.D., of MDSI Physician Services, completed a comprehensive orthopedic evaluation of Plaintiff for purposes of his Social Security claims.  Dr. Kirk diagnosed Plaintiff with chronic lumbosacral musculoligamentous strain/sprain associated with degenerative disc disease.  Functionally, Plaintiff should: (1) be able to sit, stand and walk for a total of six hours in an eight-hour workday; (2) use a lumbosacral corset frequently; (3) be able to lift and carry twenty-five pounds frequently and fifty pounds occasionally; (4) be limited to occasional bending, stooping, crouching, climbing, kneeling, balancing, crawling, pushing or pulling; (5) not work in extremely cold or damp environments; and (6) have no manipulative limitations.  Concurrent with his evaluation, Dr. Kirk also completed a medical source statement, a check-the-box and fill-in-the-blank form.  Dr. Kirk concluded Plaintiff could balance continuously, occasionally climb, stoop and kneel, but never crouch or crawl.  With regard to environmental limitations, Plaintiff could occasionally work in humid and wet conditions, but never in extreme cold or heat.  No findings were given for these limitations.  AR 368-377.

Finally, in May 2012, a few months before the hearing, Dr. Silver evaluated Plaintiff again.  Dr. Silver recounted Plaintiff's medical history in detail and gave the following diagnoses: (1) thoracic disc sprain/strain with some degeneration; (2) cervical, chronic, sprain/strain with 2-mm bulge and degeneration at C5-6 and C6-7; (3) lumbar herniated nucleus pulposus at L3-4, L4-5 and L5-S1, of 3 to 4-mm with bilateral radiculopathy of L5-S1; (4) severe L5-S1 degenerative disc with 75% collapse and radiculopathy; (5) anxiety and depression; (6) left scapular referred pain; and (7) non-industrial, 6.5-mm lesion in the left kidney.  Functionally, Plaintiff could engage in light work

5

with a fifteen to twenty pound lifting limit; is restricted to no prolonged standing or walking; no repetitive bending or stooping; and no reaching overhead bilaterally with the upper extremities. AR 412-419.

### 3. Hearing Before Administrative Law Judge

Appearing before the ALJ, Plaintiff testified his back pain radiated through the hips, thighs, calves, and down to the toes about six to seven times in the past year, each time lasting three to five days. To alleviate the pain, he would apply ice or lie down for about forty-five minutes. Plaintiff also used a muscle balm to relieve the symptoms of his neck pain. No surgery was planned for the spine or neck. AR 46-53.

On the use of his right hand, Plaintiff stated he lost function and had yet to regain full feeling due to the gunshot wound. He could lift no more than ten pounds. When questioned about nerve regeneration, Plaintiff stated, "[i]t is better but I have limited use with it," and opined his right hand had only half the strength of his left. Plaintiff also had carpal tunnel syndrome in both wrists with no surgery recommended. AR 55-57.

Testifying as a medical expert was Robert Thompson, an orthopedic surgeon. Based on his review of the record, education, experience and training, and Plaintiff's testimony, Dr. Thompson stated there was evidence of back and right leg pain, and lumbar spine degenerative arthritis at L3-4, L4-5, and L5-S1, with moderate foraminal stenosis at L5-S1on the left side. He opined that Plaintiff could work at the light exertional level pushing/pulling, lifting and carrying twenty pounds occasionally and ten pounds frequently; sit for six hours, and stand/walk for three hours out of an eight-hour workday; never crouch or crawl; and never be exposed to extreme heat, cold or damp environments. He did not think Plaintiff needed a lumbosacral corset or cane. AR 66-76.

Finally, the VE, Lawrence Hughes, testified about Plaintiff's ability to work. Based on the relevant work background, Plaintiff's testimony, and Mr. Hughes's own experience, he classified

6

Plaintiff's past employment into two jobs: project manager and construction superintendent. Mr. Hughes was asked by the ALJ to consider a person of Plaintiff's age, education and experience, and who: has the push/pull capacity and ability to work at the light exertional level; could sit for six hours, and stand and walk for three hours out of an eight-hour workday with usual breaks; could engage in occasional posturals but never crouch or crawl; never be exposed to extreme heat, cold or damp environments; may use a lumbosacral corset; and has no manipulative limitations. He opined that such person could do Plaintiff's past work as project manager as generally performed, as well as any of the sit and stand occupations such as cashier II, arcade attendant, and sampler.

Plaintiff's counsel asked Mr. Hughes to consider the same person but who is limited to only occasional handling and fingering of the right hand with full use of the left hand. He opined that such person could do the work of a project manager and arcade attendant, as well as unskilled jobs such as call out operator and surveillance system monitor. Moreover, such person could still work as a project manager even if he would be off task for fifteen percent of a workday because of unscheduled breaks due to back pain. But if such person were to miss three or more days of work per month, he would not be able to sustain the project manager job. AR 78-88.

At the hearing's conclusion, the ALJ stated that interrogatories might be sent to Dr. Thompson and Mr. Hughes as there would be additional evidence of cervical spinal issues which Plaintiff would submit. AR 89-90.

4. <u>Medical and Vocational Interrogatories</u>

In November 2012, approximately two months after the hearing, the ALJ sent Dr. Thompson additional medical records for review, along with a medical interrogatory. AR 467. That same month, Dr. Thompson reviewed the additional evidence and concluded in his response to the interrogatory that Plaintiff's impairments do not meet or equal any impairment described in the Listing of Impairments. He also completed a medical source statement, a check-the-box and fill-in-

the-blank form, wherein he indicated Plaintiff could: (1) lift and carry twenty pounds frequently and fifty pounds rarely; (2) sit for a total of six hours, and stand/walk for a total of three hours in an eight-hour workday; (3) occasionally operate foot controls with both feet; (4) occasionally climb stairs and ramps, stoop, kneel and crouch; (5) never climb ladders or scaffolds or crawl; (6) balance continuously; and (7) never work in extreme cold or heat. Concerning Plaintiff's right hand, Dr. Thompson concluded Plaintiff could reach in all directions except overhead both occasionally and frequently and handle and finger both occasionally and continuously. AR 481-488.

In July 2013, Mr. Hughes completed a vocational interrogatory. Therein, he was asked to consider a person of Plaintiff's age, education, with work experience within the past fifteen years, who could communicate in English, and who has the RFC to perform light work except that he is limited to:

- Sitting in one-hour increments for a total of six hours;
- Standing or walking in thirty-minute increments for a total of three hours;
- Never reaching overhead bilaterally;
- Occasionally to frequently reaching with the right arm and frequently reaching with the left arm;
- Manipulative activities on a continuous basis with the left hand but *continuous handling and fingering with only occasional feeling of the right hand*;
- Pushing and pulling occasionally with the right hand and frequently with the left hand;
- Occasionally using the feet bilaterally for foot controls;
- Never crawling or climbing ladders, ropes, or scaffolds;
- Balancing without restrictions;
- Occasionally performing other postural activities;
- Avoiding heavy industrial vibrations; and
- *Occasional environmental restrictions*.

AR 243 (emphasis added). Mr. Hughes opined that such person could perform Plaintiff's past jobs as project manager and construction manager, where such jobs "are sedentary in nature" and "are managerial positions that typically allow broad discretion regarding the physical requirements [of] Sit/Stand/Walk." Such person could also perform less-skilled jobs such as receptionist, appointment clerk, and order clerk and unskilled jobs such as document preparer, addresser, and surveillance system monitor. Mr. Hughes stated that no conflicts exist between the occupational evidence he

8

provided and the information contained in the Dictionary of Occupational Titles ("DOT") or the Selected Characteristics of Occupations. AR 243-245.

Plaintiff received Mr. Hughes's vocational interrogatory which proposed, by letter dated July 26, 2013, three conditions. Plaintiff asked Mr. Hughes to consider the same person in the vocational interrogatory and opine if such person would be precluded from full time employment if he is restricted in an eight-hour workday to: (1) two hours each of siting and standing/walking; (2) never stooping or bending; and (3) significant limitations in doing repetitive reaching, handling, fingering, and lifting. AR 246. There is no record of Mr. Hughes's responses.

### 5. ALJ's Decision

A claimant is disabled under Titles II and XVI if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 20 C.F.R. §§ 404.1505(a), 416.905(a). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[3]

In his written decision, the ALJ found that at step one, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 30, 2008. At step two, Plaintiff had the following severe impairments: lumbar spine degenerative joint disease, degenerative disc disease, and radial nerve injury in the right forearm with incomplete gunshot wound recovery. At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled

---

[3] "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), but is limited in an eight-hour workday to:

- Sitting in one-hour increments for a total of six hours;
- Standing or walking in thirty-minute increments for a total of three hours;
- Never reaching overhead bilaterally;
- Occasionally reaching on the right and frequently reaching on the left;
- *Occasionally handling, fine fingering and feeling with the right dominant hand*;
- Pushing and pulling occasionally with the right upper extremity and frequently with the left upper extremity;
- Occasionally using the feet bilaterally for foot controls;
- Never crawling or climbing ladders, ropes, or scaffolds;
- Balancing without restrictions;
- Occasionally performing other postural activities;
- Avoiding heavy industrial vibrations;
- *Occasionally working at unprotected heights or around hazardous moving machinery; and*
- *Occasionally having exposure to extreme heat or cold*.

At step four, Plaintiff was able to perform his past relevant work as a project manager and construction manager as generally performed. The ALJ also made the "alternative findings for step five of the sequential evaluation process" and found Plaintiff could perform other jobs which exist in significant numbers in the national economy, namely document preparer, addresser, and surveillance system monitor. Consequently, the ALJ concluded that Plaintiff was not disabled as defined under the Act since June 30, 2008 through the date of the ALJ's decision. AR 27-33 (emphasis added).

## II. DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

"If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner. However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted). "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010). But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

B. *Analysis*

On appeal, Plaintiff alleges: (1) the ALJ erred in assessing the opinion of Dr. Silver, (2) the ALJ's findings at steps four and five are not supported by substantial evidence, (3) the ALJ failed to resolve a conflict between the VE's testimony and the DOT, and (4) the ALJ erred in not permitting cross-examination of the VE.

1. Dr. Daniel M. Silver

In his written decision, the ALJ stated:

> In May 2012, treating orthopedic surgeon Daniel Silver, M.D., generally agreed with a prior April 2012 functional capacity evaluation that the claimant was limited to sitting 60 minutes, standing 30 minutes, carrying 18.5 pounds over a length of 30 feet, lifting no more than 21 pounds a third of the workday, and avoiding repetitive bending, repetitive stooping, repetitive twisting, repetitive reaching, and activities at or above the shoulder level. *Dr. Silver's treating opinion is generally consistent with Dr. Thompson's opinion and afforded significant weight.*

11

AR 31 (emphasis added).  On its face, this discussion of Dr. Silver's May 2012 opinion is confusing.  While the ALJ knowingly cited to the functional capacity opined by a different physician(s), he nonetheless assigned that opinion to Dr. Silver.  The ALJ thus conflated Dr. Silver's opinion with that of another physician(s) and provided fuel for Plaintiff's contention—that it was error to give Dr. Silver's opinion significant weight without discussing his actual opinion.  In Plaintiff's view, this was error which might have affected the RFC findings, and therefore was not harmless, because Dr. Silver's opinion is more restrictive than what was discussed by the ALJ.  The Commissioner avers that any error here was harmless because the ALJ in fact accommodated Dr. Silver's opinion in making the RFC findings.

While it was error not to address Dr. Silver's opined limitations—light work with a fifteen to twenty pound lifting limit; no prolonged standing or walking; no repetitive bending or stooping; and no reaching overhead bilaterally with the upper extremities—the Court finds such error harmless.  Each one of the limitations is subsumed in the ultimate RFC findings or is insufficiently supported by the record to warrant adoption by the ALJ.  To illustrate, the limitation of "light work with a fifteen to twenty pound lifting limit" correlates with the ALJ's finding of light work, which is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  SSR 83-10.  The limitation of "no reaching overhead bilaterally with the upper extremities" correlates with the ALJ's finding that Plaintiff could never reach overhead bilaterally.  The limitation of "no prolonged standing or walking" correlates with the ALJ's finding that Plaintiff is limited to standing or walking in only thirty-minute increments, which is found in Plaintiff's own written testimony that he could "only walk . . . for 30 minutes" at a time. AR 212.  Finally, the limitation of "no repetitive bending or stooping" finds support only in Dr. Silver's report; no other physician made a similar conclusion.  And an ALJ is not required to adopt a physician's opinion simply because he is the treating physician.  *See Magallanes v. Bowen*, 881 F.2d

747, 751 (9th Cir. 1989) ("The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted.") (citations omitted); *see e.g., Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (concluding substantial evidence supported ALJ's decision to reject portion of treating physicians' opinions).[4] Here, the finding of lumbar spine degenerative joint and disc disease and discussions of various opinions from treating and examining physicians, along with Dr. Thompson, show the ALJ considered Plaintiff's limitations but still found that Plaintiff could occasionally perform certain postural activities including bending or stooping. Plaintiff has not shown otherwise.

Plaintiff was therefore not prejudiced by the ALJ's failure to expressly discuss Dr. Silver's opinion. *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (the burden to show prejudice lies with the party alleging error by the administrative agency).

2. Vocational Expert's Response to Vocational Interrogatory

Plaintiff contends the ALJ's findings at steps four and five are not supported by substantial evidence because Mr. Hughes's responses to the vocational interrogatory are based on a less restrictive RFC than assessed by the ALJ as it relates to the right hand limitations and working environments. The Commissioner avers that while the RFC limitations are not identical in language, the ALJ's RFC finding essentially reflects what is in the vocational interrogatory.

As noted above, among the limitations in the vocational interrogatory given to Mr. Hughes are (1) *continuous handling and fingering of the right hand* and (2) *occasional environmental restrictions*. Regarding the right hand limitation, Plaintiff is correct that the ALJ's ultimate RFC finding contains a more restrictive limitation where handling and fingering of the right hand are to be

---

[4] This unpublished decision is citable under Rule 32**.**1 of the Federal Rules of Appellate Procedure. *See also* 9th Cir. R. 36–3(b).

13

done occasionally rather than continuously. But this discrepancy does not amount to reversible error because Mr. Hughes was, in fact, given the limitation of continuous handling and fingering at the hearing, and he opined that such person could still perform the work of a project manager.

As to the environmental limitation, Plaintiff's contention is one of semantics rather than substance. The limitation given to Mr. Hughes is essentially contained in the ALJ's RFC findings. The fact that the ALJ used more detailed and specific language in his RFC findings than the interrogatory does not make the former more restrictive. *See*, *e.g.*, *Gossens v. Astrue*, 375 F. App'x 799, 800 (9th Cir. 2010) ("Though the ALJ did not use the word unreasonable . . . there is no requirement to do so, and such a determination was implicit in the ALJ's findings.") (internal quotations and citation omitted). The phrase *environmental limitations* includes *working at unprotected heights or around hazardous moving machinery* and *exposure to extreme heat or cold*, both of which the ALJ set forth in his findings. *See* POMS DI 25020.015 (explaining that "environmental limitations" include, among others, the need to avoid being near dangerous moving machinery and the need to avoid extreme heat or cold).[5]

Plaintiff's contention here is therefore meritless.

### 3. Vocational Expert's Testimony and the DOT

In response to the vocational interrogatory, Mr. Hughes testified that a person with Plaintiff's RFC could perform the sedentary jobs of project manager and construction manager, and that these jobs allow for a sit-stand option, which is part of his RFC. From this, Plaintiff avers a conflict exists because the DOT's description of these jobs does not contain a sit-stand option, such that a conflict exists and the ALJ erred in not resolving it. In essence, Plaintiff's position is that he could not have

---

[5] "The [Social Security Administration's Program Operations Manual System] does not have the force of law, but it is persuasive authority." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

been found capable of performing those (past) jobs when the DOT does not contain a sit-stand option. The Commissioner contends no conflict exists.

Resolution of this issue requires, at a minimum, an understanding of the DOT and the role a VE plays in the disability evaluation. As the Commissioner explained:

> In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy. We use these publications at steps 4 and 5 of the sequential evaluation process. We may also use VEs . . . at these steps to resolve complex vocational issues.

SSR 00-4P. Importantly:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT.
>
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00-4p (emphasis added). And because the DOT only "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings, " a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p; *MARIA GUTIERREZ, Plaintiff - Appellant, v. CAROLYN COLVIN, Acting Comm'r of Soc. Sec., Defendant - Appellee.*, 2016 WL 4056067, at *1 (9th Cir. July 29, 2016) (No. 14-35231).

Here, Plaintiff's RFC included a sit-stand option, which Mr. Hughes opined was available with the jobs of project manager (DOT 189.117-030) and construction manager (DOT 187.167-042). The DOT's descriptions of these jobs do not, however, contain a sit-stand option. The first question then is whether that deviation creates a conflict. Like the parties, the Court has found no published Ninth Circuit case to directly answer this question.

Nonetheless, assuming that a conflict exists, the next question is whether the ALJ erroneously relied on Mr. Hughes's testimony. And under the circumstances, the Court finds no error. While Mr. Hughes concluded no conflict existed, he stated the jobs "are managerial positions that typically allow broad discretion regarding the physical requirements [of] Sit/Stand/Walk." AR 243. Further, when orally testifying about the project manager position at the hearing, he explained that "the farther up the ladder you go, the more you plan your own day and so forth" and "those highly responsible positions are off task 10 percent of the time anyway[.]" AR 86. Though he was addressing counsel's hypothetical question about a person's need to be off task during the workday due to unscheduled breaks to lay down, Mr. Hughes's response provided insight into the specifics of a project manager position, which he was suited to do as a VE. *See* SSR 00-4p (stating that one of the reasonable explanations for conflicts in occupational information includes instances where the VE "provide[s] more specific information about jobs or occupation than the DOT"); *see also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("The DOT "is not the sole source of admissible information concerning jobs. The Secretary may take administrative notice of any reliable job information, including ... the services of a vocational expert.") (internal quotations and citations omitted). He essentially opined that the job of project manager affords a person some degree of control over his workday, and having some control over how one spends his workday meant he could choose, to a degree, when to sit, stand/walk. Collectively viewed, Mr. Hughes's oral testimony at the hearing and the subsequent written testimony provided the ALJ with what could be interpreted as an explanation for the deviation from the DOT. With that explanation, the ALJ could therefore rely on Mr. Hughes's testimony, and did so, stating that he "rel[ied] on the vocational expert's extensive experience in the vocational rehabilitation field regarding this aspect of the residual functional capacity." AR 32.

To the extent that Plaintiff's averment encompasses the jobs of document preparer,

16

addresser, and surveillance system, which Mr. Hughes opined Plaintiff could also perform, the Court declines to address them because they concern the ALJ's alternative findings for step five, which he was not required to do once he found Plaintiff not disabled at step four. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

### 4. Cross-examination of Vocational Expert

Plaintiff contends the ALJ abused his discretion by not allowing Plaintiff to cross examine the VE through supplemental interrogatories. This, according to Plaintiff, was also a violation of section 1-2-557 of the Hearings, Appeals, and Litigation Law Manual ("HALLEX"). The Commissioner does not dispute that the ALJ declined to present the VE with Plaintiff's interrogatories, but avers no error occurred because the interrogatories include limitations which are duplicative or lack support in the record and would have elicited responses irrelevant to the disposition of Plaintiff's claims. Further, she avers Plaintiff's reliance on HALLEX is unpersuasive because it is not legally binding authority.

It is understood that use of a VE assists the ALJ in resolving vocational issues. *See* SSR 00-4p. Specifically,

> [An] ALJ poses hypothetical questions to the vocational expert that "set out all of the claimant's impairments" for the vocational expert's consideration. *Gamer v. Secretary of Health and Human Servs.,* 815 F.2d 1275, 1279 (9th Cir.1987). . . . The vocational expert then " 'translates [these] factual scenarios into realistic job market probabilities' by testifying on the record to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of 'not disabled.' " *Desrosiers,* 846 F.2d at 578 (Pregerson, J., concurring) (internal citations omitted.)

*Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The claimant may also present the VE with hypotheticals. But the claimant "is not entitled to unlimited cross-examination" and the ALJ "has discretion to decide when cross-examination is warranted." *Solis v. Schweiker*, 719 F.2d 301, 302

(9th Cir. 1983).

Here, Plaintiff presented the ALJ with three interrogatories for the VE. They involve the following restrictions in an eight-hour workday: (1) two hours each of sitting and standing/walking; (2) never stooping or bending; and (3) significant limitations in repetitive reaching, handling, fingering, and lifting. These limitations stem from Dr. Silver's opinions in the February 2012 questionnaire, of which the ALJ properly gave little weight and which Plaintiff does not dispute.

The ALJ reasoned that Dr. Silver's opinion was inconsistent with the objective medical evidence, with Plaintiff's daily activities, that it was based on Plaintiff's subjective complaint of back pain, and that even Dr. Thompson found it lacked support in the record. Most of his reasons are substantially supported by the record. First, all other evaluations of Plaintiff after February 2012, including Dr. Silver's May 2012 evaluation, generally reflect less restrictive limitations. Further, the medical consultants who reviewed Plaintiff's case around the same time found that a light RFC, which is more than Dr. Silver's opinion afforded, was proper. Second, Dr. Silver provided no findings or analysis in the questionnaire to support his conclusions; instead only stating "too much back pain!!" His opinion appears in a check-the-box form that is conclusory and devoid of analysis. And such forms are generally disfavored. *Cf.* 20 C.F.R. § 404.1527 (2011) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Finally, Dr. Thompson did in fact state in his response to the medical interrogatory that Dr. Silver's opined restrictions "are not well supported by the body of physical evidence." AR 483. Therefore, because Dr. Silver's opinion was properly discredited, Plaintiff's interrogatories cannot, in turn, be properly supported. *But cf. Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir.2000) ("In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits."). The VE responses to Plaintiff's interrogatories would not have evidentiary

value and the ALJ was therefore within his discretion not to permit cross-examination through the interrogatories. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("A vocational expert's testimony in a disability benefits proceeding is valuable only to the extent that it is supported by medical evidence.") (quotations omitted);.

Additionally, the undersign notes that a close reading of the questionnaire shows Dr. Silver may not have opined that Plaintiff had significant limitations in repetitive reaching, handling, fingering, and lifting in an eight-hour workday. Question 13 of the questionnaire states, "Does your patient have significant limitations in doing repetitive reaching, handling, fingering or lifting?" Dr. Silver circled the word "lifting" and checked the "YES" box. AR 341. Thus, to the extent that Dr. Silver concluded significant limitations apply only to repetitive lifting, this belies the validity of Plaintiff's third interrogatory.

Lastly, Plaintiff's reliance on HALLEX is unavailing because the Ninth Circuit propounded:

> As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual. *See Western Radio Services Co. v. Espy,* 79 F.3d 896, 900 (9th Cir.1996) ("we will not review allegations of noncompliance with an agency statement that is not binding on the agency").

*Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

### III. RECOMMENDATION

Accordingly, the Court recommends DENYING Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) after being served with the objections. Local Rule 304. The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153, 1156-1157 (9th Cir.1991).

IT IS SO ORDERED.

Dated:   **September 7, 2016**                              **/s/ Sandra M. Snyder**
                                                          UNITED STATES MAGISTRATE JUDGE